# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **STEPHANIE PINKARD,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 3:12-cv-02902-CLS** |
| | ) | |
| **WAL-MART STORES, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

This case is before the court on defendant's motion to dismiss for failure to state a claim upon which relief can be granted.[1]  Plaintiff, Stephanie Pinkard, commenced this action in the Circuit Court of Franklin County, Alabama on July 26, 2012.[2] Defendant, Wal-Mart Stores, Inc. (Wal-Mart), was served with the complaint on August 7, 2012,[3] and timely removed the case to federal court on September 6, 2012,[4] at which time it also filed the subject motion to dismiss.[5]

Plaintiff's putative class action complaint asserts a single cause of action under the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227 *et seq.* ("TCPA").

---

[1] Doc. no. 2 (Motion to Dismiss).

[2] *See* doc. no. 1-1 (Complaint); doc. no. 1-2 (Complaint).  There is only one complaint, but it was divided between doc. no. 1-1 and doc. no. 1-2 when filed with this court.

[3] Doc. no. 1-1, at 5-6 (Notice of Service).

[4] Doc. no. 1 (Notice of Removal)

[5] Doc. no. 2 (Motion to Dismiss).

Specifically, plaintiff claims that defendant "violated the TCPA by sending unsolicited and unauthorized text messages[6] to plaintiff and class members' cell phones and mobile devices."[7]  Defendant bases its motion to dismiss on two grounds: (1) plaintiff consented to the messages by providing her telephone number to defendant; (2) plaintiff did not plead that the text messages were sent by an "automatic telephone dialing system," which is an element of a TCPA violation.[8]  Upon consideration, the court will dismiss plaintiff's claim on the first of the foregoing grounds.

## I.  LEGAL STANDARDS

Federal Rule of Civil Procedure 12(b) permits a party to move to dismiss a complaint for, among other reasons, "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  This rule must be read together with Rule 8(a), which requires that a pleading contain only a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  While that pleading standard does not require "detailed factual allegations," *Bell Atlantic Corp. v. Twombly*, 544 U.S. 544, 550 (2007), it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678

---

[6] "*Text-messaging*, usually shortened to *texting*, is the act of communicating by sending a written message or photograph using a cellular phone."  Bryan A. Garner, *Dictionary of Legal Usage* 886 (3d ed.) (2011) (emphases in original).

[7] Doc. no. 1-2 (Complaint) ¶ 17.

[8] Doc. no. 2 (Motion to Dismiss), at 6-13.

(2009) (citations omitted).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." [*Bell Atlantic Corp.*, 550 U.S.] at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*, at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*, at 557 (brackets omitted).

*Iqbal*, 556 U.S. at 678 (alteration supplied). Moreover, a court need not accept a complaint's legal conclusions as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

As always is the case in the context of ruling upon a motion to dismiss, the district court is required to assume that

> the facts set forth in the plaintiff's complaint are true. *See Anza* [*v. Ideal Steel Supply Corp.*], 547 U.S. 451, [453,] 126 S. Ct.[1991,] 1994 [(2006)] (stating that on a motion to dismiss, the court must "accept as true the factual allegations in the amended complaint"); *Marsh v. Butler County*, 268 F.3d 1014, 1023 (11th Cir. 2001) (*en banc*) (setting forth the facts in the case by "[a]ccepting all well-pleaded factual allegations (with reasonable inferences drawn favorably to Plaintiffs) in the complaint as true"). Because we must accept the allegations of plaintiff's complaint as true, what we set out in this opinion as "the facts" for Rule 12(b)(6) purposes may not be the actual facts.

*Williams v. Mohawk Industries, Inc.*, 465 F.3d 1277, 1281 n.1 (11th Cir. 2006) (alterations supplied).

## II. FACTS AS ALLEGED

3

Defendant, Wal-Mart, operates pharmacies in its retail stores.[9]  One such pharmacy is located within the Wal-Mart store at 13675 Highway 43, Russellville, Alabama 35653.[10]  Plaintiff, Stephanie Pinkard, dropped off a prescription with the Russellville Wal-Mart pharmacy at some unspecified date and time prior to initiating this suit.[11]  Wal-Mart employees asked plaintiff for several pieces of personal information, including her cellular telephone number.[12]  Plaintiff provided that information.[13]  The employees noted that plaintiff's telephone number was needed "in case there were any questions that came up."[14]

None of the defendant's employees explicitly sought permission to send plaintiff text messages.[15]  Nevertheless, plaintiff received an undisclosed number of text messages on her cellular telephone from defendant within hours of leaving her prescription at defendant's pharmacy.[16]  The content of those text messages is not known.[17]

---

[9] Doc. no. 1-1 (Complaint) ¶ 7.

[10] *Id.*

[11] Doc. no. 1-2 (Complaint) ¶ 12.

[12] *Id.*

[13] *Id.*

[14] *Id.*

[15] *Id.* ¶ 13.

[16] *Id.* ¶ 14.

[17] *See generally* doc. no. 1-1 (Complaint); doc. no. 1-2 (Complaint).  Plaintiff's briefs attempted to supplement the facts regarding the content of the text messages, *see*, *e.g.*, doc. no. 6 (Plaintiff's Response Brief), at 9; doc. no. 12 (Plaintiff's Sur-Reply Brief), at 6, but for purposes of

Plaintiff inquired with the pharmacy's staff why she was receiving text messages from defendant.[18]   One of Wal-Mart's employees informed plaintiff that Wal-Mart automatically enrolls individuals who fill prescriptions at its pharmacies into a program that provides the enrollees with "Wal-Mart related" text messages on their cellular telephones.[19]   In fact, it is Wal-Mart's business practice to send unsolicited text messages to consumers' cellular telephones through "auto dialers and computerized equipment" after obtaining their personal information.[20]

## III.  DISCUSSION

### A.    The Telephone Consumer Protection Act

The Telephone Consumer Protection Act of 1991 (TCPA), 47 U.S.C. § 227 *et seq.*, prohibits certain telephonic communications made by, or directed to, individuals within the United States.  *See* 47 U.S.C. § 227(b)(1).  In particular, the TCPA makes it illegal

> (A) to make any call (*other than a call* made for emergency purposes or *made with the prior express consent of the called party*) using any *automatic telephone dialing system* or an artificial or prerecorded voice—
>
>       . . .

---

a motion to dismiss the court must consider only the contents of the complaint.

[18] Doc. no. 1-2 (Complaint) ¶ 14.

[19] *Id.*

[20] Doc. no. 1-1 (Complaint) ¶ 8.

(iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call[.]

47 U.S.C. § 227(b)(1)(A)(iii) (emphases and alterations supplied). Congress authorized a private right of action to enforce the Act. *See* 27 U.S.C. § 227(b)(3). Additionally, Congress directed the Federal Communications Commission (FCC) to "prescribe regulations to implement the requirements of" the TCPA. *See* 27 U.S.C. § 227(b)(2).

The TCPA defines an "automatic telephone dialing system" as "equipment which has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). The TCPA does not define a "call." Nevertheless, the FCC has noted that the term "encompasses both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls": *i.e.*, text messages. *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (July 3, 2003). Courts have upheld that interpretation under the deferential standard articulated in *Chevron v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). *E.g.*, *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 949, 951-54 (9th Cir. 2009) (discussing and applying "*Chevron* deference" to the FCC's interpretation). This court agrees with other courts

6

that have upheld the FCC's interpretation that a "call" under the TCPA includes a text message.

## B.     Express Consent To Receive A Call

"The TCPA allows autodialed and prerecorded message calls if the called party expressly consents to their use." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 7 FCC Rcd. 8752, 8769 ¶ 29 (Oct. 16, 1992); *see* 27 U.S.C. § 227(b)(1)(A).   "[U]nder the prohibitions set forth in § 227(b)(1) . . . persons who knowingly release their phone number have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary." *In re Rules and Regulations*, 7 FCC Rcd. at 8769, ¶ 31 (alterations supplied).

Defendant argues that plaintiff expressly consented to receiving text messages by providing her telephone number to defendant upon defendant's request.[21]   Prior express consent is an affirmative defense, meaning that the defendant bears the burden of proving it. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 FCC Rcd. 559, 565 ¶ 10 (Jan. 4, 2008); *Breslow v. Wells Fargo Bank, N.A.*, 867 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012); *Scott v. Merchants Ass'n Collection Division, Inc.*, No. 12-23018-CIV, 2012 WL 4896175, at *2 (S.D.

---

[21] Doc. no. 2 (Motion to Dismiss), at 6-7; doc. no. 9 (Defendant's Reply Brief), at 1-3.

Fla. Oct. 15, 2012); *Buslepp v. B&B Entertainment, LLC*, No. 12-60089-CIV, 2012 WL 4761509, at *4 (S.D. Fla. Oct. 5, 2012).

"An affirmative defense may be considered in resolving a motion to dismiss when the complaint affirmatively and clearly shows the conclusive applicability of the defense to bar the action." *Scott*, 2012 WL 489175, at *2 (quoting *Jackson v. BellSouth Telecommunications*, 372 F.3d 1250, 1274-75 (11th Cir. 2004)) (internal quotation marks omitted). The court will consider defendant's "prior express consent" defense, because the face of plaintiff's complaint clearly indicates she voluntarily provided her telephone number to employees of the defendant's pharmacy.[22]

### 1.    Express *written* consent not yet required

"[T]he TCPA is silent on the issue of what form of express consent — oral, written, or some other kind — is required." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 27 FCC Rcd. 1830, 1838 ¶ 21 (Feb. 15, 2012); *see* 47 U.S.C. §227(a) (TCPA definitions). Plaintiff insists that she did not expressly consent to receiving a call within the meaning of the TCPA, because such consent must be in writing.[23] In support of her argument, plaintiff cites the FCC's recent decision to "require prior express written consent for all telephone calls using

---

[22] *See* doc. no. 1-2 (Complaint) ¶ 12.
[23] Doc. no. 6 (Plaintiff's Response Brief), at 8; doc. no. 12 (Plaintiff's Sur-reply Brief), at 5.

an automatic telephone dialing system[.]"[24] *In re Rules and Regulations*, 27 FCC Rcd. at 1838 ¶ 20.

As defendant points out,[25] the FCC established a twelve-month waiting period for the implementation of its new rule; that period "commence[d] upon publication of [Office of Management and Budget] approval of [the FCC's] written consent rules in the Federal Registrar." *In re Rules and Regulations*, 27 FCC Rcd. at 1857 ¶ 20. The FCC published the written consent rule on June 11, 2012, *see* 77 Fed. Reg. 34233, and the Office of Management and Budget approved the rule on October 16, 2012. *See* 77 Fed. Reg. 63340. Therefore, express *written* consent will not be required until October 16, 2013.

## 2.    Plaintiff expressly consented to receiving a "call" by providing her telephone number

"[A] call made . . . with the prior express consent of the called party" does not violate the TCPA. 47 U.S.C. § 227(b)(1)(A) (alterations supplied). Moreover, express consent exists when an individual voluntarily provides her telephone number to another. *See In re Rules and Regulations*, 7 FCC Rcd. at 8769, ¶ 31. Plaintiff attempts to distinguish her consent to receive a voice telephone call from her consent to receive a text message. She argues that providing her telephone number to

---

[24] Plaintiff also cites a consumer guide published by the FCC on its website, *see* doc. no. 12, at 5; doc. no. 12-1 (Consumer Guide), but that document does not represent binding legal authority.

[25] *See* doc. no. 9 (Defendant's Reply Brief), at 4-5.

defendant evinced only "limited consent to receive a voice phone call" that, "in no way[,] can be considered express consent to receive text messages[.]"[26]  She claims that "[t]ext messages and voice phone calls have always been treated differently under the TCPA and FCC rules.  The right to call does not give you the right to send text messages to the other."[27]  Plaintiff's distinction does not comport with common sense and everyday experience.  More importantly, the FCC and the courts have rejected the argument that the TCPA treats traditional, voice telephone calls differently from text messages.

As noted earlier, a "call" under the TCPA includes not only a traditional, voice telephone call, but also a text message.  *See In re Rules and Regulation*, 18 FCC Rcd. at 14115 ¶ 165; *Satterfield*, 569 F.3d at 949, 951-54.  Thus, 47 U.S.C. § 227(b)(1)(A) effectively reads "a [text message] made . . . with the prior express consent of the [texted][28] party . . .".  In short, there is no distinction between traditional, voice telephone calls and text messages for the purposes of § 227(b)(1)(A).

---

[26] Doc. no. 6 (Plaintiff's Response Brief), at 7.

[27] Id.

[28] "Texted" is simply the (recently recognized) term that describes the act of having sent or received a text message.  *See* http://www.merriam-webster.com/dictionary/text (last visited Nov. 8, 2012) ("She just texted me back."); http://dictionary.reference.com/browse/texted (last visited Nov. 8, 2012) ("The only way I can ever reach her is to text her."); http://www.thefreedictionary.com/texted (last visited Nov. 8, 2012) ("She texted me when she arrived.").

10

That conclusion is also supported by the fact that both cellular telephone calls and cellular text messages are effectuated by dialing *the very same telephone number*. To provide one's telephone number is to willingly give the recipient access to both methods of communication. No statutory, regulatory, or caselaw rationale to distinguish the two methods presently exists. Consequently, under § 227(b)(1), a person "who knowingly release[s] [her] phone number ha[s] in effect given [her] invitation or permission" to be contacted at that number, including via text message. *In re Rules and Regulations*, 7 FCC Rcd. at 8769, ¶ 31 (alterations supplied).

In opposition to defendant's motion, plaintiff relies heavily on *Satterfield* and its definition of express consent: "Express consent is consent that is clearly and unmistakably stated."[29] *Satterfield*, 569 F.3d at 955 (quoting *Black's Law Dictionary* 323 (8th ed. 2004)) (internal quotation marks and alteration omitted). By simply reciting that definition while providing scant analysis, plaintiff overlooks the fact that providing her cellular telephone number to defendant was "clear and unmistakable" consent to be contacted at that number. To hold otherwise would contradict the overwhelming weight of social practice:[30] that is, distributing one's telephone number is an invitation to be called, especially when the number is given at another's request.

---

[29] Doc. no. 6 (Plaintiff's Response Brief), at 6; doc. no. 12 (Plaintiff's Sur-Reply Brief), at 1-2.

[30] "[W]e [need not] be blind as judges to what we know as men." *Venn v. United States*, 400 F.2d 207, 211 (5th Cir. 1968) (Wisdom, J.) (alternation supplied).

Moreover, although the TCPA does not define "express consent," *see* 47 U.S.C. § 227(a), the FCC interprets that term to encompass a situation where an individual voluntarily divulges her telephone number. *See In re Rules and Regulations*, 7 FCC Rcd. at 8769, ¶ 31. Because that interpretation is eminently reasonable, it is entitled to deference. *See Poveda v. U.S. Attorney General*, 692 F.3d 1168, 1176 (11th Cir. 2012); *Chen v. U.S. Attorney General*, 565 F.3d 805, 809 (11th Cir. 2009).

In fact, *Satterfield* actually hinders, rather than helps, plaintfff. The plaintiff in *Satterfield* provided her telephone number to Nextones, who was not a party to the suit. *Satterfield*, 569 F.3d at 949. The Court found that "no express consent was given *in this case*," because Ms. Satterfield "solely *consented* to receiving promotion material *from Nextones*[,]" not from *the defendants*, Simon & Schuster and Ipsh!, which were unaffiliated with Nextones. *Id.* at 955 (emphasis and alteration supplied). Unlike Ms. Satterfield, plaintiff in this case sued the party to whom she gave her telephone number. And in that situation, the *Satterfield* Court explicitly found that express consent existed. *Id.*

Plaintiff also relies upon *Buslepp v. B&B Entertainment, LLC*, No. 12-60089-CIV, 2012 WL 4761509 (S.D. Fla. Oct. 5, 2012).[31] The plaintiff in that case filed a TCPA action against B&B Entertainment for sending him unsolicited text messages.

---

[31] Doc. no. 12 (Plaintiff's Sur-Reply Brief), at 12.

*Buslep*, 2012 WL 4761509, at *1.  The Court granted partial summary judgment against B&B Entertainment's "prior express consent" defense, because Buslepp's unchallenged affidavit swore that he had *not* provided B&B Entertainment with his telephone number.  *Id.* at *5.  Of course, the opposite is true in this case: the face of plaintiff's complaint *admits* that she gave defendant her cellular telephone number.[32]

In sum, plaintiff pled herself out of court in this instance.  A text message counts as a "call" under the TCPA.  But all "calls" made with "prior express consent" of the "called party" do not violate the TCPA.  "Prior express consent" to receive a call is given when the "called party" voluntarily proffers her telephone number to the calling party.  By her complaint's own admission, plaintiff provided her telephone number to defendant at defendant's request.[33]  Thus, defendant's motion to dismiss is due to be granted.  The court need not consider defendant's argument that plaintiff insufficiently pled that the text messages were sent by an "automatic telephone dialing system."

## C.    Plaintiff's Motion to File an Amended Complaint

Perhaps sensing the fate of her complaint, plaintiff filed an opposed motion for leave to file an amended complaint late on November 8, 2012, the day before the court

---

[32] Doc. no. 1-2 (Complaint) ¶ 12.

[33] *Id.*

was ready to enter its opinion on the fully briefed motion to dismiss.[34]  As plaintiff notes in her motion, "[s]ince the removal of this case [on September 6, 2012], there have been no less than five briefs filed by the parties relating to dismissal or non-dismissal of this action":[35] a brief, a response brief, a reply brief, a sur-reply brief, and a response brief to the sur-reply.  Plaintiff believes that an amended complaint "will render moot and lay to rest all of the argument advanced by defendant in their original motion to dismiss[.]"[36]

Plaintiff is not correct.  The court will deny the motion to file an amended complaint, because the amendment would be futile.  The motion to dismiss has been fully briefed, and is due to be granted.  Plaintiff was welcome to file her motion at any time during the previous *two months* that the motion to dismiss was being litigated. Instead, plaintiff waited until after the motion to dismiss was fully briefed and ready for decision.

The court has reviewed plaintiff's proposed amended complaint.  While the amended complaint adds much factual detail, it still admits the basic fact that plaintiff

---

[34] Doc. no. 14 (Motion for Leave to File an Amended Complaint).  Specifically, the motion was filed on November 8, 2012 at 9:18 PM CST.  *See* Notice of Electronic Filing from CM/ECF Database (Nov. 8, 2012).  The court was prepared to enter its order at the open of business on November 9th.

[35] *Id.* ¶ 2 (alternations supplied).

[36] *Id.* ¶ 3.

voluntarily provided her telephone number to defendant upon request.[37]  Plaintiff's proposed amended complaint attempts to frame her consent as "limited," "because no one at Wal-Mart mentioned anything about using plaintiff's private information that they were able to get *from her* and then enrolling her into an automated service or program whereby she would begin to receive text messages or solicitations from Wal-Mart."[38]  Plaintiff notes that

> [a]t no time did anyone at the Wal-Mart pharmacy or any other employee of Wal-Mart ask for plaintiff's permission to enroll her into any automatic program that would send plaintiff unsolicited text messages on her cell phone.  There was no literature about the program given to plaintiff.  There was no marketing materials or signs in the pharmacy promoting or notifying customers of this [so-called] involuntary program.[39]

Plaintiff inverts the burden of proof on the issue.  Once she voluntarily provided defendant with her telephone number (*i.e.*, generally consented), it was *her* responsibility to *explicitly* state the limited scope of her consent.  As the FCC has said, "persons who knowingly release their phone number have in effect given their invitation or permission to be called at the number which they have given, *absent instructions to the contrary*."  *In re Rules and Regulations*, 7 FCC Rcd. at 8769, ¶ 31 (emphasis supplied).  Once plaintiff handed over her telephone number, the matter

---

[37] *See* doc. no. 14-1 (Proposed Amended Complaint) ¶ 12.

[38] *Id.* (emphasis supplied)

[39] *Id.* ¶ 13 (alterations supplied).

15

was settled, unless she instructed Wal-Mart otherwise, which she does not allege she did.

Thus, because plaintiff voluntarily provided her telephone number to defendant without informing defendant of the limited scope of her consent, plaintiff's motion to file an amended complaint is due to be denied.

## IV. CONCLUSION

For all of the reasons stated above, the court GRANTS defendant's motion to dismiss for failure to state a claim upon which relief can be granted. The court DENIES plaintiff's motion for leave to file an amended complaint. Plaintiff's claim is DISMISSED with prejudice. Costs are taxed to plaintiff. The Clerk is directed to close this file.

DONE and ORDERED this 9th day of November, 2012.

_____

United States District Judge

16